UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:18-CV-758-DRL-MGG |
| CO MANGOLD *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, has filed many discovery-related motions. ECF 135; ECF 159; ECF 161; ECF 171; ECF 193; ECF 201; ECF 203; ECF 210; ECF 215; ECF 223. Most are focused on the defendants' failure to preserve and produce a shirt worn by Officer Gaddis on May 15, 2017, although Mr. Scruggs raises other issues as well.

A party has a duty to preserve evidence when he knows, or should have known, that litigation is imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). The duty to preserve evidence encompasses any evidence that the non-preserving party knew or reasonably could foresee would be relevant to the action. *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *10-11 (N.D. Ill. August 18, 2005); *Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *32 (N.D. Ill. Oct. 20, 2000).

In this case, Mr. Scruggs is proceeding against Correctional Officer Mangold, Correctional Officer Gaddis, Correctional Officer Smith, Complex Director Salery,

Lieutenant Creasy, and Captain Earheart for retaliating against him on May 15, 2017, after he complained about the manner in which inmates were given recreation and filed grievances and lawsuits. The defendants allegedly retaliated against Mr. Scruggs by placing him in a strip-cell for twenty-four hours and arranging to have him beat (or, in the case of Officer Mangold, participating in the beating) when he refused to comply with that punishment, in violation of the First Amendment. ECF 5. And, he is proceeding against Officer Mangold for using excessive force against him on May 15, 2017, in violation of the Eighth Amendment.

Mr. Scruggs's complaint (ECF 2) indicates that he insulted Officer Mangold, and Officer Mangold responded by indicating that he wanted to kick Mr. Scruggs's ass. Mr. Scruggs then said to Officer Mangold, "if you want to kick my ass all you have to do is what you did last time and just tell them I spit on you." *Id.* Mr. Scruggs then started throwing paper outside of his cell so that the guards would have to clean it up. Officer Mangold cleaned up the mess and told Mr. Scruggs to "keep it up," so Mr. Scruggs followed the officer's orders and continued to throw small pieces of paper out of his cell. *Id.* Officers Mangold, Smith, and Gaddis then met in the office and talked while watching Mr. Scruggs. Officer Smith was allegedly punching her hand into her fist, pointing at Mr. Scruggs, and putting her fist to her eye, implying that she would punch him.

After the meeting, Officer Gaddis stood outside of Mr. Scruggs's cell. Officer Gaddis claimed that Mr. Scruggs spat on him, and that there was spit on his shirt. Mr. Scruggs denies this, and he can be heard in the cell extraction video (*see* ECF 120) repeatedly demanding that the shirt be preserved for court so that he can have it DNA

2

tested. Mr. Scruggs also submitted an informal grievance dated May 19, 2017, but he did not receive a response. Mr. Scruggs represents that this informal grievance included a request that the shirt be preserved. Because he received no response, Mr. Scruggs filed three additional informal grievances addressed to Officers Mangold, Smith, and Gaddis, each dated May 26, 2017. Mr. Scruggs's copy of each of these informal grievances includes a request that the shirt be preserved for court. ECF 135-1 at 2-7.

The shirt was initially provided to internal affairs – there is an evidence record for the shirt. ECF 135-1 at 16-19. During the discovery process, Mr. Scruggs asked that the shirt be produced to the court so he could arrange for DNA testing. ECF 105. Defendants, through former counsel Brandon Skates, responded as follows: "According to the Internal Investigations Department at the facility, through Investigator Corey McKinney, there was no Internal Investigation conducted over this incident and Gaddis' shirt was not kept for evidence." ECF 128. Attorney Skates also addressed this issue in a correspondence to Mr. Scruggs dated August 13, 2020. ECF 149. In that correspondence, counsel again stated that there was not an internal affairs investigation. *Id.* Furthermore, Attorney Skates stated that it does not appear that any named defendant destroyed the shirt, and that the shirt was destroyed pursuant to the facility's retention schedule because no one had indicated that it needed to be preserved. *Id.*

In addition, Officers Mangold, Smith, and Gaddis each answered an interrogatory asking what steps they took to preserve the shirt after receiving notice in Mr. Scruggs's May 19, 2017, informal grievance that Mr. Scruggs wanted the shirt saved for court. ECF 166; ECF 167; ECF 170. Officer Mangold indicated that, when he saw the spit, he told

Officer Gaddis to go talk to the Lieutenant. ECF 166. However, he never possessed the shirt such that he could preserve it, and he did not have the authority to take it from Officer Gaddis. *Id.* Officer Smith likewise indicated that the shirt was never in her custody and control, although she believes Officer Gaddis took it to internal investigations. ECF 167. Officer Gaddis confirmed this, indicating that, after the incident, he turned the shirt over to the Internal Investigations office on or about May 19, 2017, and he does not know what happened to it after it left his custody and control. ECF 170.

Mr. Scruggs seeks an order that the defendants show cause why the shirt was not preserved. ECF 135. However, an explanation has already been provided. Mr. Scruggs wants the defendants to show cause why an investigation is needed to preserve the shirt. *Id.* But this is a rhetorical question. Clearly an investigation is not needed to preserve the shirt; it is simply part of their explanation for why the shirt was not preserved. And, Mr. Scruggs asked for an order to show cause why there was no investigation (ECF 135), but he is not entitled to demand an investigation. Mr. Scruggs also seeks an order to show cause why, if an investigation was needed to preserve the shirt, only the shirt was destroyed and not also the video. *Id.* But – once again – an investigation was not needed to preserve the shirt or the video. Therefore, these requests will be denied.

Additionally, Mr. Scruggs wants an order to show cause why Internal Affairs policy 00-01-103 cannot be produced, at least in part. ECF 135. Counsel objected to Mr. Scruggs's request to produce this policy because, according to counsel, Indiana Code § 5-14-3-4(b)(23)(B) prohibits an inmate from receiving records that concern or affect the security of a correctional facility. ECF 165. While it is true that such materials are

4

exempted from disclosure under the Indiana Access to Public Records Act pursuant to Indiana Code § 5-14-3-4(b)(23)(B), this is not an Indiana APRA request. This is discovery in a federal lawsuit. Disclosure of the policy may pose a security risk, but counsel has relied upon an inapplicable statute without enunciating any further reasons for not disclosing the policy. Mr. Scruggs's request would have been better suited to a motion to compel than a motion seeking a rule to show cause. Nonetheless, counsel will be ordered either to produce the policy or show cause why doing so would pose a security risk.

And, Mr. Scruggs wants an order to show cause why, if email searches take 30 days, certain emails that he requested were not produced sooner. ECF 135. There are too many filings in this case for the court to comb the record in search of the discovery requests and emails in question. But here, Mr. Scruggs complains only about the time it took to provide the emails, not the failure to produce them. Squabbles such as these are not worthy of an order to show cause. Therefore, this request will be denied.

Mr. Scruggs seeks a subpoena directed to the Chief Counsel for the Department of Correction and Cory McKinney, the head investigator of Westville's Internal Investigation office, seeking information about why the shirt was not preserved. ECF 159. This request may have been filed because former counsel for the defendants, Brandon Skates, in correspondence dated August 13, 2020, stated that he did not represent the Internal Investigations Office or the entire Department of Correction and suggested that Mr. Scruggs file a non-party request for production. *See* ECF 149 at 3. Though counsel may not represent the Internal Investigations office or Department of Correction in this action, as a Deputy Attorney General, he certainly had the ability to obtain relevant

information from the Internal Investigations office, as is demonstrated by the information he has provided. Suggesting that Mr. Scruggs seek discovery from a non-party for information within his control was inappropriate.

Here, Mr. Scruggs has requested a subpoena to obtain the IDOC's policy governing what evidence is stored, how it is stored, and when it is destroyed. He seeks the policy in effect from the date of the incident (May 15, 2017) until the destruction of the shirt. But Mr. Scruggs has a copy of this policy with an effective date of April 19, 2016. ECF 223-1 at 40-46. If this policy was modified before the incident, then the defendants need to produce the policy to Mr. Scruggs or show cause why they cannot produce it.

Mr. Scruggs also wants to subpoena copies of state and federal laws that govern the Internal Investigations office's obligation to preserve evidence and laws regarding assault by spitting. Mr. Scruggs is not entitled to a subpoena that requires a non-party to conduct legal research and provide him with copies of that research.

He wants to subpoena documents showing when Officer Gaddis's shirt was given to the Internal Investigations office, where the shirt was stored, when it was destroyed, and why it was destroyed. But some of these questions have been answered by the defendants and their counsel: the shirt was provided on or about May 19, 2017, it was destroyed pursuant to the normal procedures for evidence retention because there was no internal investigation and no one requested that the shirt be preserved. Mr. Scruggs had requested that the shirt be preserved, so this statement is not accurate, but it is the explanation that was provided. Precisely where it was stored or when it was destroyed does not alter the outcome: the shirt is still gone.

He wants the subpoena to order the non-parties to provide the reason the shirt was not preserved, the reason Mr. Scruggs was not charged with spitting on Officer Gaddis, and information explaining why investigators only get one side of the story. And Mr. Scruggs wants to know what video was viewed during their investigation. He wants the subpoena to direct the non-parties to provide information as to why the video system malfunctions and has not been repaired, and why—when they know this system is inadequate—they installed the same system at a different prison facility. Subpoenas are meant to obtain documents and things, not testimony.

He also seeks documents explaining why investigators only get one side of the story, but – to the extent that such documents might exist (and this seems unlikely) – they are not relevant to the claims Mr. Scruggs is pursuing here. This case is not about the investigation that followed the incident or lack thereof – it is about retaliation for exercising First Amendment rights and excessive force. Explanations of how after-the-fact investigations are conducted are not relevant. Because Mr. Scruggs does not seek to subpoena any document that is likely to lead to admissible evidence, his motion (ECF 159) will be denied.

Mr. Scruggs also filed a motion to compel the defendants to produce Officer Gaddis's shirt. ECF 171. Here, Mr. Scruggs contends that the defendants are lying and that they do actually have the shirt. He supports this assertion by noting that the defendants claimed that they did not have certain video evidence too, but in response to an order to show cause, a portion of the video was located. This argument does not hold water. The defendants have asserted that they do not have the shirt, and that the Internal

7

Investigations office has indicated that the shirt was destroyed. Mr. Scruggs has produced no evidence to the contrary. Therefore, this motion (ECF 171) will be denied.

Mr. Scruggs seeks to compel responses to interrogatories regarding the failure to preserve the shirt. ECF 201. He specifically asked Officers Mangold, Smith, and Gaddis to describe the steps each took to preserve the shirt *after* receiving his May 19, 2017, grievance that requested the shirt be preserved for court. ECF 201-1 at 3. None of the officers' responses answered this question. Instead, each focused on the day of the incident. It can be inferred from these responses that the defendants did nothing when they received the informal grievance, because they no longer had custody or control of the shirt. Nonetheless, Mr. Scruggs is entitled to an answer to the question he posed to the defendants. This motion (ECF 201) will be granted.

Mr. Scruggs takes issue with a response to a request for production of grievances. ECF 215. Mr. Scruggs already has a copy of these grievances in his own records. However, Mr. Scruggs indicates that the defendants have suggested that, when Mr. Scruggs's second informal grievances were originally submitted, they did not contain the request that the shirt be preserved. Rather, Mr. Scruggs altered the document by adding that later. Mr. Scruggs denies this, and he has requested a copy of the grievance to prove that the copy the prison received did in fact contain the request that the shirt be preserved. The defendants responded, but they produced only the front of the document. Mr. Scruggs wants both the front and the back, as the request that the shirt be preserved was on the back of the document. The defendants have not responded to Mr. Scruggs's motion to compel. This motion (ECF 215) will be granted, and the defendants will be ordered to

8

produce complete copies of the grievances, including the back side of informal grievances, or show cause why they cannot produce them.

Mr. Scruggs also takes issue with a response to an interrogatory directed to Officer Gaddis. He asked that Officer Gaddis watch the "range video" of him sweeping and identify at what time Mr. Scruggs spat on him. ECF 193; ECF 203; ECF 210. Officer Gaddis's response asks Mr. Scruggs to identify the videos he wants him to review and provide a copy to the litigation liaison so it can be copied for counsel. *Id*. Mr. Scruggs filed two identical motions seeking sanctions (ECF 193; 210) and a motion to compel a substantive response (ECF 203). Counsel submitted the relevant video to the court on June 19, 2020 (ECF 120) and presumably reviewed it prior to submission. Mr. Scruggs's request was made just two months later. ECF 156. There are only five video segments on the disc produced to the court, and it is clear to anyone who has viewed them which one is relevant to Mr. Scruggs's request. ECF 120. Under Rule 11, any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." "The district court ha[s] considerable discretion in deciding whether to issue Rule 11 sanctions." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020) (citations omitted). The response does not appear to have been made in good faith, but sanctions are not necessary here. Attorney Skates is no longer representing the defendants, and a reprimand is, in this court's judgment, an adequate deterrent. The motions for sanctions (ECF 193; ECF 210) will be denied. Counsel for defendants are warned, however, that a pattern of similar behavior in this court is likely to result in

9

sanctions. Additionally, Officer Gaddis will be ordered to provide a substantive response to the interrogatory.

The motion to compel (ECF 203) also seeks to compel Officer Gaddis to provide a substantive response to the following interrogatory.

> The cell door has a narrow opening out the back side of the door. Facing the door this opening would be on the right side of the door. You claim that you saw Scruggs spit out the opening in your interrogatories response #4 and 5. Identify how you saw Scruggs spit out the right side of his door. Identify as to whether you saw Scruggs put his face to the door opening, or whether Scruggs stood back from the door and spit, asking that you identify what you saw Scruggs do and how you saw it when Scruggs is taller than the door window, so is the opening, and Scruggs would have to place his face and body against the door to spit out the right side of the door. What did you SEE Scruggs do as he was spitting on you on 5/15/17.

ECF 203-1 at 14-15. Counsel objected on the grounds that the interrogatory is compound and confusing. The interrogatory is, as counsel claims, compound, but once again, anyone familiar with the case can understand what it is that Mr. Scruggs is after here – what exactly did Officer Gaddis see? Though the court could reopen discovery and have Mr. Scruggs rephrase his interrogatory, that would unnecessarily delay this case. Accordingly, counsel will be ordered to respond to this interrogatory by describing exactly what he saw when Mr. Scruggs spat on him, including how Mr. Scruggs was positioned such that it was possible given the position of the opening on the cell door.

Additionally, the motion to compel (ECF 203) seeks to compel Officer Mangold to provide a substantive answer to the following interrogatory.

> Identify as to why and how you were allowed to remain on the cell-extraction team after all WCU staff which came to my cell door that you had me set up for a fight that you wanted.

ECF 203-1 at 2. The interrogatory appears to be missing the words "I told." Counsel was unable to decipher the word "remain," and responded by objecting because the

10

interrogatory was unintelligible. *Id.* at 5. While the word remain is difficult to decipher, someone familiar with the case should be able to discern Mr. Scruggs's meaning. For this reason, Officer Mangold will be ordered to respond to the interrogatory.

Additionally, Mr. Scruggs seeks an order to show cause why the video system malfunctions, why this issue has not been corrected, and why reports of the problem have not been made. ECF 161. This request stems from Mr. Scruggs's long-standing assertion that video evidence has been edited in *all* of the cases he has filed in this court in order to cover up wrongdoing on the part of prison staff. He "find[s] it hard to believe that every time [he] says staff at WCU did something to [him] or when video should show [him] expressing pain" the system malfunctions. As already explained to Mr. Scruggs (ECF 153), an order to show cause is not warranted here based on what has allegedly transpired in other cases. There is no evidence that the video in this case was altered – only Mr. Scruggs's assertion that it does not match his recollection. A show cause order is not warranted, and the motion will be denied.

Finally, Mr. Scruggs seeks a default judgment or an adverse jury instruction as a sanction for discovery misconduct pursuant to Federal Rule of Civil Procedure 37. ECF 223. When the duty to preserve evidence is breached and a party is prejudiced, the court has both statutory and inherent authority to impose sanctions, but the sanction of a default judgment requires a showing of bad faith.

> The exercise of either power requires the court to find that the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction for discovery violations. Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith.

11

*Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775 (7th Cir. 2016). In this circuit, even the lesser sanction of an adverse inference instruction requires a showing of bad faith. *Bracey v. Greondin*, 712 F.3d 1012, 1018-20 (7th Cir. 2013) ("In this circuit, when a party intentionally destroys evidence in bad faith, the judge may instruct the jury to infer the evidence contained incriminatory content."); *Everett v. Cook Cnty*, 655 F.3d 723, 727 (7th Cir. 2011) ("[I]n order to draw an inference that the absent documents contained negative information, Everett must show that the documents were intentionally destroyed in bad faith."). Other circuits have less stringent standards but not this one. *Bracey*, 712 F.3d at 1020. The burden of demonstrating bad faith rests on the party seeking sanctions. *Id.*

Here, the record demonstrates that Mr. Scruggs made it known that he wanted the shirt retained for court on the day of the incident. His statements on that date, which are clearly audible on the cell extraction video (ECF 120) should have placed at least some defendants on notice that the shirt needed to be retained. And, at least for purposes of this order, the court will assume that he also included requests that the shirt be retained in his first and second informal grievances, submitted on May 19, 2017, and May 26, 2017. The second informal grievances were directed to Officers Mangold, Smith, and Gaddis. But neither Officer Mangold nor Officer Smith ever had custody or control of Gaddis's shirt. Officer Gaddis, on the other hand, provided his shirt to the Internal Investigations office. Ideally, each potential defendant made aware of a request that evidence be preserved would separately ensure that whoever had custody and control of the shirt knew it needed to be retained, but the failure to do so demonstrates – at best - negligence.

And regarding Officer Gaddis, who surrendered his shirt to the Internal Investigations office, the record suggests he acted with good faith in providing the shirt. Mr. Scruggs has not sustained his burden of demonstrating that any defendant acted in bad faith.

Mr. Scruggs argues that the Internal Investigations office acted in bad faith too; and that because of the special relationship between Internal Investigations and the defendants, that is sufficient to warrant a default judgment or adverse jury instruction. His evidence of bad faith on the part of the Internal Investigations office is that they have claimed that there was no investigation, but the discovery demonstrates there was an investigation. Mr. Scruggs, however, is using the term "investigation" rather loosely. A grievance response indicates that, in response to Mr. Scruggs's grievance, his "complaint was turned over to the Office of Investigations and Intelligence," that video was reviewed, and that "there were no indications of misconduct by staff during the extraction process." ECF 223-1 at 17. Mr. Scruggs construes that video review as an investigation, but the review resulted in a determination that "[n]o investigation is warranted in relation to the cell extraction incident." *Id.* The Internal Investigations office investigates staff misbehavior, and they did not find that an investigation was warranted here. Thus, the statement that there was no investigation does not demonstrate bad faith. Mr. Scruggs also argues that the claim that there was no request that the shirt be preserved demonstrates bad faith because, if they watched the video, they heard the request that the shirt be preserved. But, it is not clear if they watched the entire video or if they used audio while watching. Their purposes in watching the video was not focused on Mr. Scruggs's statement, but on staff behavior: Mr. Scruggs alleged that he had been

13

water boarded by staff, and the reviewer concluded that there was no evidence of water boarding. Thus, that some portion of the video was reviewed by the Internal Investigations office does not necessarily demonstrate that they were aware that Mr. Scruggs wanted the shirt retained for this lawsuit. There is no evidence that the Internal Investigations office considered investigating Mr. Scruggs's allegation that Officer Gaddis lied about him spitting on him so that punishment could be impose on Mr. Scruggs and so that Officer Mangold, who allegedly wanted to fight with Mr. Scruggs, could participate in the cell extraction.

Furthermore, Mr. Scruggs has not demonstrated that he has been prejudiced by the failure to preserve the shirt, as it is not clear that he possesses the means necessary to have DNA testing performed on the shirt even if it had been produced. Therefore, the motion (ECF 223) will be denied. The defendants and their counsel are admonished that, when an inmate alerts them to the need to preserve evidence for litigation (whether before or after a complaint has been filed), they have an affirmative obligation to take prompt steps to ensure that evidence is preserved. Where the Internal Investigations office has taken custody of evidence, this includes communicating with the Internal Investigations office that litigation is imminent, and evidence must be preserved.

For these reasons, the court:

(1) DENIES Christopher L. Scruggs's Motion for an Order to Show Cause (ECF 135) except to the extent that the court ORDERS the defendants to either produce Internal Investigations policy 00-01-103 or show cause why producing this policy poses a security concern;

(2) DENIES Christopher L. Scruggs's Motion for Court Endorsed, Blank Non-Party Subpoena to Produce (ECF 159), but ORDERS the defendants to respond to Christopher L. Scruggs's request for the policy regarding storage of evidence by confirming that the policy effective April 19, 2016, was still in effect on May 15, 2017, producing the policy that was in effect, or showing cause why they cannot produce it;

(3) DENIES Christopher L. Scruggs's Motion for Order to Show Cause (ECF 161);

(4) DENIES Christopher L. Scruggs's Motion to Compel (ECF 171);

(5) DENIES Christopher L. Scruggs's Motion for Rule 11(b) Sanctions (ECF 193; ECF 210);

(6) GRANTS Christopher L. Scruggs's Motion to Compel (ECF 201);

(7) ORDERS Defendants Officers Mangold, Smith, and Gaddis to supplement their responses to interrogatory asking about steps taken to preserve Gaddis's shirt following receipt of Christopher L. Scruggs's May 19, 2017, informal grievance (ECF 201-1 at 3), as explained in this order, by April 9, 2021;

(8) GRANTS Christopher L. Scruggs's Motion to Compel (ECF 203)

(9) ORDERS Defendant Officer Gaddis to provide a substantive response to interrogatory numbers 15 and 16 in Christopher L. Scruggs's request for interrogatories (ECF 156), as explained in this order, by April 9, 2021;

(10) ORDERS Defendant Officer Mangold to provide a substantive response to interrogatory number 12 in Christopher L. Scruggs's request for interrogatories (ECF 154), as described in this order;

(11) GRANTS Christopher L. Scruggs's Motion to Compel (ECF 215);

(12) ORDERS Defendants to supplement their response to the request for production to include both front and back of all informal grievances previously provided to Christopher L. Scruggs or to show cause why they cannot comply with this order by April 9, 2021;

(13) DENIES Christopher L. Scruggs's Motion for Rule 37 Sanctions (ECF 223); and

(14) ADMONISHES the defendants and their counsel that, when an inmate alerts them to the need to preserve evidence for litigation (whether before or after a complaint has been filed), they have an affirmative obligation to take prompt steps to ensure that evidence is preserved.

SO ORDERED.

March 26, 2021                              *s/ Damon R. Leichty*
                                             Judge, United States District Court