UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

    Plaintiff,

v.                                          CAUSE NO. 3:18-CV-758 DRL-MGG

CO MANGOLD *et al.*,

    Defendants.

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, proceeds on two claims. ECF 5. First, Mr. Scruggs is proceeding "against Correctional Officer Mangold, Correctional Officer Gaddis, Correctional Officer Smith, Complex Director Salery, Lieutenant Creasy and Captain [Earhart] in their individual capacities for compensatory [damages] for retaliating against him on May 15, 2017, in violation of the First Amendment[.]" *Id.* at 6. Second, Mr. Scruggs is proceeding "against Correctional Officer Mangold in his individual capacity for compensatory damages for using excessive force against him on May 15, 2017, in violation of the Eighth Amendment[.]" *Id.* The defendants filed a summary judgment motion. ECF 244. Mr. Scruggs filed a response. ECF 269. The summary judgment motion is ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit[.]" *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

## FACTS

Around 9:00 a.m. on May 15, 2017, Correctional Officers Mangold and Smith were conducting recreation and showers for offenders in Mr. Scruggs' cell pod. ECF 244-1. The officers approached Mr. Scruggs' cell to take him to recreation. *Id.* The officers placed Mr. Scruggs in mechanical restraints and had him back out of his cell. *Id.* As Mr. Scruggs exited his cell, he kicked his breakfast tray down the range. *Id.*; ECF 246, Ex. F. Officer Mangold then told Mr. Scruggs to step to the side so he could be pat down, but Mr. Scruggs refused. ECF 244-1; ECF 2 at 3. Officers Mangold and Smith then placed Mr. Scruggs back into his cell. *Id.* Mr. Scruggs did not get his recreation time and was placed on a 24-hour cell restriction. ECF 244-1 at 2. The court accepts these facts as undisputed.

Later that afternoon, around 1:00 p.m., Mr. Scruggs started throwing paper out of his door to "make them clean it up." ECF 2 at 3; ECF 143 at 1; ECF 244-3; ECF 246, Ex. G. Officer Gaddis went to Mr. Scruggs' cell and began sweeping and picking up the papers. *Id.* Officer Gaddis contends that, while cleaning the area, Mr. Scruggs spit on him and he noticed spit on his right shoulder. ECF 242 at 1-2; ECF 244-3. Mr. Scruggs denies that he spit on Officer Gaddis. ECF 269 at 5. There is thus a disputed fact whether Mr. Scruggs spit on Officer Gaddis.

Officer Gaddis left the area and reported to his supervisor that Mr. Scruggs had spit on him. ECF 143 at 2; ECF 144 at 1-2; ECF 244-3. Captain Earhart, Lt. Creasy, and Complex Director Sayler then approached Mr. Scruggs' cell, informed him he was being placed on 24-hour strip cell due to the report he had assaulted Officer Gaddis with bodily fluid, and ordered him to submit to mechanical restraints. ECF 144 at 1, 8, 13; ECF 244-3. Mr. Scruggs refused Lt. Creasy, Capt. Earhart, and Director Sayler's orders to submit to mechanical restraints. *Id.*; ECF 188 at 1. After several minutes of Mr. Scruggs refusing to comply with orders to submit to mechanical restraints, Lt. Creasy, Capt. Earhart, and Director Sayler left the area. ECF 244-3. The court accepts these facts as undisputed.

Sgt. Alejandro Davila was instructed to assemble a cell extraction team. *Id.*; ECF 181 at 2. The extraction team consisted of Sgt. Davila and four team members, including Officer Mangold. ECF 244-3; ECF 244-4. Lt. Creasy briefed the extraction team regarding their duties and informed them the extraction was to occur due to Mr. Scruggs' refusal to submit to mechanical restraints. ECF 244-5; ECF 247, Ex. H. Officer Mangold's duty was to quickly pin Mr. Scruggs against the wall or on the floor if he fell or laid down. ECF

3

244-4. After the briefing, the extraction team proceeded to Mr. Scruggs' cell. ECF 247, Ex. H. The court accepts these facts as undisputed.

Sgt. Davila and the extraction team approached Mr. Scruggs' cell door. *Id.*; ECF 244-3. Sgt. Davila ordered Mr. Scruggs to submit to mechanical restraints, and Mr. Scruggs refused. *Id.* Sgt. Davila then applied a chemical agent through an MK9 Fogger into Mr. Scruggs' cell. *Id.* The extraction team relocated to the bottom of the range for the required ten-minute period. *Id.* After ten minutes, the extraction team returned to Mr. Scruggs' cell door. *Id.* Sgt. Davila again ordered Mr. Scruggs to submit to mechanical restraints, and Mr. Scruggs refused. *Id.* Sgt. Davila then deployed a second chemical agent, and the extraction team returned to the bottom of the range. *Id.* After ten minutes, the extraction team returned to Mr. Scruggs' cell a third time. *Id.* Mr. Scruggs refused another order to submit to mechanical restraints, Sgt. Davila deployed another chemical agent, and the extraction team returned to the bottom of the range. *Id.* After ten minutes, the extraction team came back to Mr. Scruggs' cell a fourth time. *Id.* Mr. Scruggs refused another order to submit to mechanical restraints. *Id.* The extraction team waited outside of Mr. Scruggs' cell for approximately fifteen minutes until they were authorized to enter his cell. *Id.* Sgt. Davila manually unlocked Mr. Scruggs' cell door and a team member pulled it open. ECF 244-3; ECF 247, Ex. I. As soon as the cell door opened, Officer Mangold entered the cell and was struck with an orange liquid substance. *Id.*; ECF 180 at 1; ECF 247, Ex. J. Mr. Scruggs had collected multiple rounds of chemical agent in a bowl and then threw it in Officer Mangold's face when he entered the cell. *Id.* Officer Mangold continued into Mr. Scruggs' cell with the extraction team, pinned Mr. Scruggs to the

ground, and restrained him. ECF 247, Ex. I; ECF 244-3. Once Mr. Scruggs was handcuffed, he was escorted out of the cell, decontaminated, brought to the medical unit, and escorted back to his cell after it was cleared. *Id.* The court accepts these facts as undisputed.

## ANALYSIS

A.   *First Amendment Claim.*

Mr. Scruggs is proceeding "against Correctional Officer Mangold, Correctional Officer Gaddis, Correctional Officer Smith, Complex Director Salery, Lieutenant Creasy and Captain [Earhart] in their individual capacities for compensatory [damages] for retaliating against him on May 15, 2017, in violation of the First Amendment[.]" ECF 5 at 6. Specifically, Mr. Scruggs alleged in his complaint the defendants conspired to impose an unwarranted punishment on him and have him beaten in retaliation for him speaking about how recreation time is handled and for filing earlier grievances and lawsuits. ECF 2 at 3-5.

To prevail on this claim, Mr. Scruggs must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To demonstrate the third element, Mr. Scruggs must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted).

5

The defendants argue there is no evidence they retaliated against Mr. Scruggs for speaking out or filing grievances and lawsuits, as the undisputed evidence shows all the punishments he received on May 15, 2017, were in response to his refusal to comply with staff orders. ECF 245 at 12. Mr. Scruggs responds the defendants knew he did not spit on Officer Gaddis and conspired to punish him in retaliation for his previous complaints, grievances, and lawsuits. ECF 269 at 1-2, 25.

Here, Mr. Scruggs offers no evidence of a causal link between his First Amendment activity and the punishments he received on May 15, 2017. *See Bridges*, 557 F.3d at 546; *Woodruff*, 542 F.3d at 551. Instead, the undisputed evidence shows the defendants punished Mr. Scruggs in response to his refusal to follow orders. Specifically, Mr. Scruggs was subjected to three punishments on May 15, 2017: (1) a 24-hour cell restriction; (2) strip cell status; and (3) a cell extraction. Each punishment will be addressed in turn.

First, around 9:00 a.m. on May 15, 2017, the defendants placed Mr. Scruggs on a 24-hour cell restriction. Because it is undisputed the 24-hour cell restriction was imposed after Mr. Scruggs kicked a meal tray and refused to comply with an order to step to the side to be pat down, no reasonable jury could conclude this punishment was imposed in retaliation for Mr. Scruggs' First Amendment activity. *See* ECF 2 at 3; *Bridges*, 557 F.3d at 546.

Second, around 1:00 p.m. on May 15, 2017, Mr. Scruggs was placed on strip cell in response to a report he spit on Officer Gaddis. Here, it is undisputed that (1) Mr. Scruggs threw papers out of his cell, (2) Officer Gaddis arrived and began cleaning the papers,

6

and (3) Officer Gaddis abruptly left the area and reported to his supervisor that Mr. Scruggs had spit on him. Mr. Scruggs argues he did not spit on Officer Gaddis. ECF 269. However, even assuming Mr. Scruggs did not spit on Officer Gaddis, it is undisputed Officer Gaddis reported to his supervisor that Mr. Scruggs had spit on him. The supervisors attest that, in response to Officer Gaddis' report, they determined to put Mr. Scruggs on strip cell after reviewing the evidence and talking with Mr. Scruggs and the staff involved. ECF 144 at 2, 8-9, 13-14. Mr. Scruggs responds the supervisors knew Officer Gaddis was lying about being spit on and instead conspired to punish him in retaliation for his complaints. ECF 269 at 7-9, 25. However, Mr. Scruggs provides no evidence the supervisors believed Officer Gaddis was lying about being spit on. *See Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016) (a plaintiff "is not entitled to inferences supported only by speculation or conjecture"). Moreover, even assuming Officer Gaddis lied about being spit on, there is no evidence he did so with a retaliatory motive because there is no evidence Officer Gaddis knew of Mr. Scruggs' First Amendment activity. *See id.* Accordingly, because (1) it is undisputed the supervisors placed Mr. Scruggs on strip cell in response to Officer Gaddis' report Mr. Scruggs had spit on him, and (2) there is no evidence Officer Gaddis or any other defendant acted with a retaliatory motive, no reasonable jury could conclude the defendants placed Mr. Scruggs on strip cell in retaliation for his First Amendment activity.

Third, the defendants forcibly extracted Mr. Scruggs from his cell on May 15, 2017, to enforce the strip search order. Here, it is undisputed the defendants ordered the cell extraction in response to Mr. Scruggs' refusal to submit to mechanical restraints.

7

Similarly, it is undisputed the extraction team only used force against Mr. Scruggs after Mr. Scruggs refused numerous orders to submit to mechanical restraints. Mr. Scruggs responds he "does not have to follow any order that is not given for a [penological] reason," but he provides no authority for this assertion. ECF 269 at 13. Because it is undisputed the defendants ordered and carried out the cell extraction in response to Mr. Scruggs' refusal to comply with orders, no reasonable jury could conclude the cell extraction was enacted in retaliation for Mr. Scruggs' First Amendment activity.

Accordingly, Mr. Scruggs has not provided evidence of a causal link between his First Amendment activities and any of the punishments imposed on May 15, 2017. *See Woodruff*, 542 F.3d at 551. Summary judgment is thus warranted in favor of the defendants on this claim.

      B.    *Eighth Amendment Claim.*

Mr. Scruggs is proceeding "against Correctional Officer Mangold in his individual capacity for compensatory damages for using excessive force against him on May 15, 2017, in violation of the Eighth Amendment[.]" ECF 5 at 6. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id.* at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed

versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

Officer Mangold argues he did not use excessive force against Mr. Scruggs because he merely carried out his responsibilities as a member of the extraction team and used only enough force as was necessary to secure Mr. Scruggs and restore discipline. ECF 245 at 14-15. Here, it is undisputed Officer Mangold's responsibility as a member of the extraction team was to enter Mr. Scruggs' cell and pin him against the nearest wall or floor until he could be restrained. *See* ECF 244-4. It is also undisputed that, during the extraction, Mr. Scruggs threw a chemical agent in Officer Mangold's face when he entered his cell and Officer Mangold responded by pinning Mr. Scruggs to the ground until Mr. Scruggs could be restrained by the other officers. These undisputed facts show Officer Mangold used only enough force as was necessary to carry out his responsibilities and restore order. *See Hendrickson*, 589 F.3d at 890.

Mr. Scruggs argues Officer Mangold used excessive force during the cell extraction for a number of reasons. ECF 269. First, Mr. Scruggs argues that any use of force was excessive because he never spit on Officer Gaddis, so there was no penological justification for the cell extraction. *Id.* at 21-25. However, the cell extraction was ordered in response to Mr. Scruggs' refusal to submit to mechanical restraints and was thus necessary to restore order. Second, Mr. Scruggs argues Officer Mangold struck him in the face and beat his head into the wall during the cell extraction. ECF 269 at 16-17. However, the video recording shows only that Officer Mangold pinned Mr. Scruggs to the ground

9

and helped restrain him and does not show Mr. Scruggs suffered any injuries consistent with being struck. *See* ECF 247, Exh. I; *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (holding that, when "the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape"). Last, Mr. Scruggs argues Officer Mangold's actions after the cell extraction suggested he enjoyed using force against Mr. Scruggs, as he stated "Merry Christmas to me" and was seen smiling with another correctional officer. ECF 269 at 24. However, because Officer Mangold used a reasonable amount of force during the cell extraction, his subjective feelings regarding the use of force are not material. *See Hendrickson*, 589 F.3d at 890.

Because the undisputed evidence shows Officer Mangold used a reasonable amount of force to carry out his responsibilities and restore order, no reasonable jury could conclude Officer Mangold violated Mr. Scruggs' Eighth Amendment rights. Summary judgment is thus warranted in favor of Officer Mangold on this claim.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 244);

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Christopher L. Scruggs; and

(3) DENIES AS MOOT defendants' motion for an extension of time to file a reply (ECF 271).

SO ORDERED.

September 21, 2021                                     *s/ Damon R. Leichty*
                                                       Judge, United States District Court

11